### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE


Walter Hutchinson, Jr.

   v.                                    Civil No. 12-cv-376-JL

Warden, New Hampshire
State Prison


### REPORT AND RECOMMENDATION


Walter Hutchinson, appearing pro se, petitions for a writ
of habeas corpus.  See 28 U.S.C. § 2254.  He claims that his
conviction for first-degree murder violated: (1) his Fifth
Amendment right to be free from double jeopardy; (2) his
Fourteenth Amendment right to due process; and (3) his Sixth
Amendment right to the effective assistance of counsel.  Before
me for a report and recommendation is respondent's motion for
summary judgment.  Hutchinson has filed no objection.  For the
reasons that follow, I recommend that Judge Laplante grant
respondent's motion for summary judgment.


### The Legal Standard

A federal court may grant habeas-corpus relief "only on the
ground that [a petitioner] is in custody in violation of the
Constitution or laws or treaties of the United States."  28
U.S.C. § 2254(a).  The power of the federal courts to grant

habeas-corpus relief to state prisoners has been significantly limited by passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Under that statute, when a prisoner brings a claim in federal court that "was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d),

> [f]ederal habeas relief may not be granted  . . . unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, [28 U.S.C.] § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (parallel citations omitted); see also Rosenthal v. O'Brien, 713 F.3d 676, 682-83 (1st Cir. 2013).  As the Harrington Court went on to explain:

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  Cf. Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error

correction through appeal. Jackson v. Virginia, 443
U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in
judgment).  As a condition for obtaining habeas corpus
from a federal court, a state prisoner must show that
the state court's ruling on the claim being presented
in federal court was so lacking in justification that
there was an error well understood and comprehended in
existing law beyond any possibility for fairminded
disagreement.

Harrington, 131 S. Ct. at 786-87 (parallel citations omitted).

## Background

In 1991, Hutchinson was convicted of attempted murder and

first-degree assault, "based on evidence that [in April of 1991]

he beat, bound, and strangled his former girlfriend [Kimberly

Ernest], causing severe brain damage by depriving her of oxygen

for at least three minutes."  State v. Hutchinson (Hutchinson

I), 137 N.H. 591, 592 (1993).  The opinion in Hutchinson I

further describes the facts adduced at trial:

> Before the attack, the defendant told several friends
> that he wanted to tie up, rape, and kill the victim
> because she was cheating on him.  The defendant
> testified at trial and admitted to having committed
> the assault, but denied that he intended to kill the
> victim.  A psychiatrist who examined the defendant
> testified that he had acted without premeditation.

Id.  The New Hampshire Supreme Court ("NHSC") affirmed in part,

rejecting Hutchinson's arguments that the trial court erred by:

(1) instructing the jury "on the generic crime of attempted

murder, rather than instructing on premeditation and 'attempted

first degree murder,' as the indictment specified," id.; and (2)

"allowing the prosecutor to state in his closing argument that proof of premeditation [was] unnecessary for an attempted murder conviction," id. at 596.  The NHSC did, however, agree with Hutchinson that his convictions for both first-degree assault and attempted murder violated his right to be free from double jeopardy and remanded the case with instructions to set aside one of the two convictions.  See id.

Ernest died in 2005.  The following facts concerning her death are undisputed:

> Ernest remained in a near comatose state in the Rockingham County Nursing Home for approximately fourteen years until her death on November 6, 2005. In the days leading up to her death, Ernest exhibited signs of illness.  On November 3, 2005, she had chest congestion and a fever, and was wheezing and coughing. Nursing home personnel administered Tylenol and Robitussin, as well as nebulizer treatment.  Two days later, Ernest's temperature rose again and she sustained a three to five minute seizure.  She was again administered Robitussin and nebulizer treatment, and was additionally treated with an extra dose of her seizure medication, Dilantin, and placed on oxygen by way of nasal catheter.  Despite those measures, Ernest's oxygen levels dropped and she sustained a second seizure, which lasted approximately forty-five minutes.  She was then transported to the hospital, where x-rays indicated she had developed a respiratory infection.  At that point Ernest's family chose to treat her only with comfort measures.  She died several hours later.

State v. Hutchinson (Hutchinson III), 161 N.H. 765, 766-67 (2011).

After Ernest died, Hutchinson was charged with first-degree murder and two variants of second-degree murder.  Those charges, like the ones that resulted in his 1991 conviction, were based upon his attack on Ernest in April of 1991.  Hutchinson moved to dismiss the indictments, arguing that his constitutional right to be free from double jeopardy barred a subsequent prosecution for murder based upon the same conduct that supported his conviction for attempted murder.  See State v. Hutchinson (Hutchinson II), 156 N.H. 790, 791 (2008).  The trial court denied Hutchinson's motion to dismiss.  See id.  Hutchinson filed an interlocutory appeal, see id., and the NHSC affirmed the trial court, see id. at 796.

Hutchinson was then tried on the murder charges, and convicted of first-degree murder.  See Hutchinson III, 161 N.H. at 766.  On appeal, Hutchinson challenged the sufficiency of the evidence, arguing "that the admitted risks to Ernest's health as a result of his actions [did] not establish the necessary element of legal causation."  Id. at 767.  The NHSC affirmed Hutchinson's conviction.  See id. at 772.

After Hutchinson's murder conviction was affirmed, he moved for a new trial, arguing that he received ineffective assistance of counsel, due to the failure of his trial counsel "to conduct a proper investigation and present clear and convincing evidence

that was readily available, showing that he did premiditatively [sic] murder Ms. Ernest." Pet., Attach. 1 (doc. no. 1-1), at 17. Judge Nadeau denied Hutchinson's motion. See id. at 94. Hutchinson appealed, and the NHSC declined his notice of appeal. See id. at 110.

As construed in my Order of May 8, 2013, Hutchinson's petition in this court consists of the following claims:

> 1.   Hutchinson's conviction violates his rights guaranteed by the Fifth Amendment's Double Jeopardy Clause;

> 2.   Hutchinson's conviction violates his Fourteenth Amendment right to due process because the evidence at trial was insufficient to prove his guilt beyond a reasonable doubt; and

> 3.   Hutchinson's conviction for first degree murder violates his Sixth Amendment right to the effective assistance of counsel, because his trial counsel failed to present evidence at trial to counter the allegation of premeditation.

Doc. no. 5, at 4.

**Discussion**

A. Claim One

Hutchinson's first claim is that his convictions for murder and attempted murder violated his Fifth Amendment right to be free from double jeopardy because both convictions were based upon the same facts. Respondent argues that he is entitled to summary judgment on Claim One because the NHSC both identified

and followed relevant Supreme Court precedent when it rejected Hutchinson's double-jeopardy argument.   Respondent is correct.

In its opinion affirming the trial court's denial of Hutchinson's motion to dismiss the indictments charging him with murder, the NHSC relied upon the U.S. Supreme Court's opinion in Diaz v. United States, 223 U.S. 442 (1912).   In that case, the Court "addressed the question of double jeopardy where a homicide charge followed a defendant's initial conviction for assault and battery after the same victim died from injuries sustained during the assault."   Hutchinson II, 156 N.H. at 792 (citing Diaz, 223 U.S. at 448-49).   According to the NHSC:

> The Diaz Court rejected that defendant's double
> jeopardy claim, stating:
>
>> The homicide charged against the accused . . .
>> and the assault and battery . . . although
>> identical in some of their elements, were
>> distinct offenses both in law and in fact . . . .
>> At the time of the trial for the [assault and
>> battery] the death had not ensued, and not until
>> it did ensue was the homicide committed. Then,
>> and not before, was it possible to put the
>> accused in jeopardy for that offense.
>
> Id.   Thus, the United States Supreme Court
> acknowledged that double jeopardy was not a bar to a
> subsequent prosecution for a greater offense where all
> of the necessary elements of that offense did not
> exist at the time of the first trial.   See also
> Garrett v. United States, 471 U.S. 773, 791 (1985);
> Brown [v. Ohio], 432 U.S. [161,] 169 n.7 [(1977)];
> Jeffers [v. United States], 432 U.S. [137,] 151,
> [(1977)].

Hutchinson II, 156 N.H. at 792 (parallel citations omitted). While Diaz involved a conviction for assault and battery that preceded a homicide charge, the NHSC pointed out that "[a]t least four states have applied the Diaz rule in the context of an attempted murder and subsequent murder indictment." Id. at 794 (citing People v. Scott, 939 P.2d 354, 362 (Cal. 1997); Waddy v. State, 661 So. 2d 351, 352 (Fla. Dist. Ct. App. 1995); People v. Carrillo, 646 N.E.2d 582, 585 (Ill. 1995); State v. Poland, 232 So. 2d 499, 501-02 (La. 1970), vacated in part, 408 U.S. 936 (1972)).

The double-jeopardy argument in Hutchinson's petition is drawn largely, and in many places verbatim, from his brief to the New Hampshire Supreme Court. However, it omits any mention of Diaz.[1]  While Hutchinson disagrees with the decision that resulted from his appeal of the double-jeopardy issue, he has not demonstrated that the NHSC rendered a decision that was contrary to or involved an unreasonable application of clearly established federal law, which is the standard he must meet in this court.  See Harrington, 131 S. Ct. at 785.  The NHSC followed Supreme Court precedent, in the form of Diaz, and

---

[1] I use the word "omits" because Hutchinson's Supreme Court brief devoted approximately five pages to Diaz, see Pet., Attach. 1 (doc. no. 1-1), at 43-47, while that opinion is not mentioned at all in his petition to this court.

applied the holding in that opinion as it has been applied in at least four other states, which underscores the reasonableness of its application of Diaz.  In sum, Hutchinson asks this court to reach a different result than that reached by the NHSC, but provides no cognizable legal basis for the ruling he seeks. Accordingly, as to Claim One, respondent is entitled to judgment as a matter of law.

### B. Claim Two

Hutchinson next claims that his conviction violated his Fourteenth Amendment right to due process because the evidence at trial on the cause of Ernest's death was insufficient to prove his guilt beyond a reasonable doubt.  Respondent argues that Claim Two: (1) is unexhausted; (2) was procedurally defaulted; and (3) fails on the merits.

The court begins with respondent's exhaustion argument. "AEDPA instructs that habeas relief 'shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State.'" Coningford v. Rhode Island, 640 F.3d 478, 482 (1st Cir. 2011) (quoting 28 U.S.C. § 2254(b)(1)(A)).  "To achieve exhaustion, 'a habeas petitioner bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim.'"  Id. (quoting Adelson v. DiPaola, 131

F.3d 259, 262 (1st Cir. 1997)).  The "fair presentment" requirement may be met by, among other things, "assert[ing] . . . a state-law claim that is functionally identical to a federal constitutional claim."  Coningford, 640 F.3d at 482 (citing Scarpa v. Dubois, 38 F.3d 1, 6 (1st Cir. 1994)); cf. Foxworth v. St. Amand, 570 F.3d 414, 426 (1st Cir. 2009) ("a state-court adjudication of an issue framed in terms of state law is nonetheless entitled to deference under section 2254(d)(1) as long as the state and federal issues are for all practical purposes synonymous and the state standard is at least as protective of the defendant's rights as its federal counterpart") (citing McCambridge v. Hall, 303 F.3d 24, 35 (1st Cir. 2002)).

While respondent notes, correctly, that Hutchinson did not cite federal law as a basis for his sufficiency-of-the-evidence claim in his direct appeal, he also states that "[t]he state court applied the same standard that is applied in federal courts and found that the evidence was sufficient with respect to causation," Resp't's Mem. of Law (doc. no. 9-1) 24.  As to the congruence between federal and state standards, respondent is also correct.  Compare Jackson, 443 U.S. at 319 ("the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt") (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)) (emphasis in the original) with Hutchinson III, 161 N.H. at 767 ("In a challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt.") (citing State v. Sweeney, 151 N.H. 666, 673 (2005)).

Because Hutchinson presented a state-law sufficiency-of-the-evidence claim that was functionally identical to a federal sufficiency-of-the-evidence claim, he did, in fact, exhaust Claim Two.  See Coningford, 640 F.3d at 482.  And, because the NHSC ruled on that claim, there is no basis for respondent's argument that it was procedurally defaulted.  Accordingly, the court moves to the merits.

On the merits, there is not much to say.  As with Claim One, the argument Hutchinson makes in his petition on Claim Two is a nearly verbatim recapitulation of the argument he made in his brief to the NHSC on the sufficiency-of-the-evidence issue. In fact, he concludes the discussion of Claim Two this way: "Because the State did not establish the element of causation beyond a reasonable doubt, the convictions should be set aside." Pet. (doc. no. 1) 18.  This court, of course, does not affirm or

reverse convictions.  Rather, in this case, the court's task is
to determine whether the NHSC's decision on the sufficiency
issue resulted in a violation of Hutchinson's constitutional
rights.  Hutchinson, however, does not even address the NHSC's
decision in his petition and has filed no objection to
respondent's motion for summary judgment.  Because Hutchinson
bears the burden of showing that the NHSC's decision on the
sufficiency issue was contrary to or an unreasonable application
of clearly established federal law, see Harrington, 131 S. Ct.
at 785, but has said nothing about that decision, respondent is
entitled to judgment as a matter of law on Claim Two.

    C. Claim Three

    After the NHSC affirmed Hutchinson's conviction for first-
degree murder, he moved for a new trial, arguing that he
received ineffective assistance of counsel.  Specifically, he
contended that his "trial counsel failed to conduct a proper
investigation and present clear and convincing evidence that was
readily available, showing that he did not premiditatively [sic]
murder Ms. Ernest."  Pet., Attach. 1 (doc. no. 1-1), at 16.  He
described that evidence as "the findings of both the 1991 expert
witnesses, establishing that [he] did not act with
premeditation."  Id. at 21.  The term "findings," in turn,

appears to refer back to the previous page of his motion, which
states:

> [T]rial counsel at Mr. Hutchinson's first trial had
> consulted with an expert witness, namely a
> psychiatrist [Dr. Drummond], and had Mr. Hutchinson
> interviewed to determine if the crime was committed
> with premeditation.  The defense psychiatrist found
> that Mr. Hutchinson had not acted with premeditation.
> Noting the power of such testimony, the State sought
> to rebut such a finding with their own expert, namely
> another psychiatrist [Dr. Drukteinis].  The State's
> expert concurred with the defense's expert.

Id. at 20.  While Hutchinson's motion referred to both Dr.

Drummond's testimony at his 1991 trial, see id. at 17, 18, 22,

23, 24, and to reports prepared by Drs. Drummond and Drukteinis,

see id. at 23, 24, it appears from the record in this case that

the only finding that Hutchinson placed before the superior

court in his motion for a new trial is a single sentence from

Hutchinson I: "A psychiatrist who examined the defendant

testified that he had acted without premeditation." 137 N.H. at

592.

    In her order denying Hutchinson's motion, Judge Nadeau

stated:

> The sole basis for the defendant's motion is
> counsel's failure to present expert testimony
> regarding the defendant's lack of premeditation and
> deliberation at the time he beat and strangled the
> victim.  Because an expert's opinion regarding the
> defendant's mental state at the time of the murderous
> act is inadmissible evidence under New Hampshire Rule
> of Evidence 704, as a matter of law, counsel could not

> be found to be ineffective for failing to produce such
> testimony.  See State v. [St.] Laurent, 138 N.H[.] 492
> (1994) (court held that expert testimony regarding
> defendant's mental state unnecessary and would not aid
> jury in search for truth, as jury was capable of
> deciding issue without expert advice).

Id. at 94.  Presumably on account of her determination that
Hutchinson had not established deficient performance by his
trial counsel, Judge Nadeau did not reach the issue of
prejudice.  Because the NHSC declined Hutchinson's appeal from
Judge Nadeau's order, that order is the last reasoned decision
in the case.  As such, it is the focus of the court's analysis.
See King v. MacEachern, 665 F.3d 247, 252 (1st Cir. 2011)
(quoting Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010);
citing Malone v. Clarke, 536 F.3d 54, 63 n.6 (1st Cir. 2008)).

While the discussion of Claim Three in Hutchinson's
petition generally follows his motion for a new trial, it puts a
slightly different spin on things.  He begins by describing his
1991 trial:

> Hutchinson was originally charged in 1991 with
> Attempted First Degree Murder and First Degree
> Assault.  Because premeditation is an element of first
> degree murder, trial counsel at that time sought to
> attack the element of premeditation through expert
> testimony.  To that end, counsel consulted with an
> expert psychiatrist, Dr. Drummond.  After examination,
> Dr. Drummond found that . . . multiple factors had
> impeded Hutchinson's ability to act with deliberation
> and premeditation.  Dr. Drummond ultimately concluded
> that Hutchinson had not premeditatively acted when he
> attached Ernest.

Pet. 8-9.  While Hutchinson now alleges that Dr. Drummond found multiple factors that impeded his ability to premeditate his attack on Ernest, he has produced no evidence, such as Dr. Drummond's trial testimony or reports, showing: (1) that Dr. Drummond ever gave an opinion that Hutchinson lacked the ability to premeditate his attack; or (2) the facts supporting such an opinion.  As to how his counsel handled his 2009 trial, Hutchinson has this to say:

> Prior to trial, counsel did not investigate, nor consult with Dr. Drummond, nor any other psychiatrist as a means of mitigating the premeditation element. As a result, no exculpatory evidence as concerns premeditation was presented by the defense.

Id. at 9.

Hutchinson's current claim is that "his 2009 trial attorney should have clearly recognized the importance of addressing the premeditation element" and should have addressed it "by presenting the findings of at least the defense expert [from his 1991 trial]."  Pet. 20-21.  In other words, he asserts "that a reasonably competent attorney under prevailing norms should have consulted with an expert to rebut the premeditation element." Id. at 21.  He claims that he was prejudiced by his counsel's failure to consult with an expert "in two ways: 1) the failure to investigate was a prejudice to [his] ability to properly

determine the course of defense strategy; and 2) it deprived Hutchinson [of] the ability to present mitigation evidence as to the level of culpability," id. at 23.  Respondent argues that: (1) Hutchinson's ineffective-assistance claim is not reviewable because it was decided by the state courts on independent and adequate state law grounds; (2) Hutchinson's counsel did not provide ineffective assistance because the evidence he says his counsel should have introduced was inadmissible; and (3) Hutchinson cannot demonstrate prejudice.

Respondent's first argument is that "[b]ecause the [trial] court denied [Hutchinson's ineffective-assistance] claim on state law grounds, its decision is not reviewable."  Resp't's Mem. of Law (doc. no. 9-1) 27.  He bases that argument on Olszewski v. Spencer, in which the court of appeals explained:

> We are precluded from reviewing state court decisions on habeas review if the decision rests on "independent and adequate state ground[s]." Simpson v. Matesanz, 175 F.3d 200, 205-06 (1st Cir. 1999) (citing Trest v. Cain, 522 U.S. 87 (1997)). "[I]ndependent and adequate state grounds exist where 'the state court declined to hear [the federal claims] because the [defendant] failed to meet a state procedural requirement.'"  Id. (quoting Brewer v. Marshall, 119 F.3d 993, 999 (1st Cir. 1997)).

466 F.3d 47, 62 (1st Cir. 2006) (parallel citations omitted). Because no state court has ever declined to hear Hutchinson's ineffective-assistance claim on procedural grounds, Olszewski

would appear to be inapplicable to the circumstances of this case.  Accordingly, I turn to the merits.

A criminal defendant claiming ineffective assistance of counsel, under the standard articulated in Strickland v. Washington, 466 U.S. 668 (1984), must "show both that his counsel provided deficient assistance and that there was prejudice as a result."  Harrington, 131 S. Ct. at 787; see also Wright v. Marshall, 656 F.3d 102, 108 (1st Cir. 2011) (citing Strickland, 466 U.S. at 687; Shuman v. Spencer, 636 F.3d 24, 31 (1st Cir. 2011)).  Regarding the first prong of the Strickland analysis:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness."  [Strickland,] 466 U.S. at 688.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance.  Id., at 689.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id., at 687.

Harrington, 131 S. Ct. at 787 (parallel citations omitted); see also Wright, 656 F.3d at 108.  In other words, "[j]udicial scrutiny of counsel's performance must be highly deferential."  United States v. Valerio, 676 F.3d 237, 246 (1st Cir. 2012) (citation omitted).  That level of deference is intended "to

avoid 'the distorting effects of hindsight' and allow [courts] 'to evaluate the conduct from counsel's perspective at the time.'" United States v. Rodriguez, 675 F.3d 48, 56 (1st Cir. 2012) (citing Strickland, 466 U.S. at 689).

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Harrington, 131 S. Ct. at 787 (quoting Strickland, 466 U.S. at 694).  Thus, "[i]t is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'  Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington, 131 S. Ct. at 787-88 (quoting Strickland, 466 U.S. at 693, 687).

Finally, when applying the Strickland standard while ruling on a petition for a writ of habeas corpus, a federal reviewing court owes an especially high degree of deference to the decision of the state court:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  The standards created by Strickland and § 2254(d) are both "highly deferential," [466 U.S.] at 689; Lindh v. Murphy, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, Knowles [v. Mirzayance], 556 U.S. [111,

123 (2009)].  The Strickland standard is a general one, so the range of reasonable applications is substantial.  556 U.S., at [123].  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788 (parallel citations omitted); see also Morgan v. Dickhaut, 677 F.3d 39, 47 (1st Cir. 2012) ("Thus, as we have explained, '[h]abeas review involves the layering of two standards.  The habeas question of whether the state court decision is objectively unreasonable is layered on top of the underlying standard governing the constitutional right asserted.'") (quoting O'Laughlin v. O'Brien, 568 F.3d 287, 299 (1st Cir. 2009)).

I begin my consideration of the merits with some clarification.  While Hutchinson at least implies that his counsel did not "clearly recognize[ ] the importance of addressing the premeditation element of [Hutchinson's] murder charge," Pet. 20, the trial record demonstrates that Hutchinson's counsel was acutely aware of that issue.  In the fifth sentence of Attorney Smith's opening statement, she said: "Walter did not intend to kill Kim."  Trial Tr. vol. 1, 36:20, Sept. 22, 2009.  She devoted at least half of her opening

19

statement to that defense, and stated it repeatedly.[2]  She

concluded her opening statement this way:

> <u>Walter did not intend to kill Kim</u> and he did not
> cause her death.  He was tried, convicted and
> sentenced in 1991 for those brutal acts that he
> committed.  But he did not cause her death, <u>he did not
> intend to kill her</u> and he is not guilty of murder.
> Thank you.

<u>Id.</u> at 46:19-23 (emphasis added).  And, just as Attorney Smith

did in her opening statement, Hutchinson's co-counsel, Attorney

Nye, devoted a substantial portion of her closing argument to

the issue of premeditation.  In addition, Hutchinson's counsel

elicited evidence to support that argument through cross-

examination.  In short, Hutchinson's counsel clearly understood

the importance of addressing that issue, and acted on that

understanding.

That said, the question before this court is whether Judge

Nadeau's denial of Hutchinson's motion for a new trial was

contrary to or an unreasonable application of Strickland.  See

Harrington, 131 S. Ct. at 785.  Thus, to the extent that

Hutchinson's petition in this court presents ineffective-

---

[2] <u>See</u> Trial Tr. vol. 1, 37:17-18, Sept. 22, 2009 ("he
thought he had killed Kim and he never intended to do that");
<u>id.</u> at 40:9 ("He didn't plan anything."); <u>id.</u> at 42:2 ("This
[Kim's death] was not something that he wanted . . . ."); <u>id.</u> at
<u>42</u>:19-20 ("It [Kim's death] was not want he intended to do, he
was driven by pure emotion."); <u>id.</u> at 43:21 ("he did not plan
this"); <u>id.</u> at 44:6 (stating that Hutchinson said "I know I
didn't want to kill her.").

assistance arguments that were not presented to Judge Nadeau,
this court must necessarily disregard those efforts to reframe
the claim.  See Coningford, 640 F.3d at 482 (explaining that
habeas petitioners must fairly and recognizably present state
courts with the legal and factual bases for their federal
claims).

The category of newly asserted arguments includes
Hutchinson's claims that his trial counsel erred by not trying
to introduce: (1) a purported opinion by Dr. Drummond, that
appears nowhere in the record, that Hutchinson lacked the mental
capacity to premeditate his attack on Ernest;[3] and (2) the facts
underlying Dr. Drummond's opinion.[4]  That leaves Hutchinson's
claims that his 2009 trial counsel erred by: (1) not trying to
introduce the opinion from Dr. Drummond that was admitted at his
1991 trial, i.e., that he did not premeditate his attack on

---

[3] This opinion, should it even exist, is different from the
one reported in Hutchinson I.  At Hutchinson's first trial, Dr.
Drummond testified that Hutchinson did not premeditate his
attack on Ernest, not that Hutchinson could not have
premeditated the attack.

[4] Even if those two arguments were properly before the
court, both would fail.  For one thing, Hutchinson has produced
neither the opinion nor the facts at issue, which makes it
impossible for the court to determine whether it was an error
for counsel to eschew them at trial.  Beyond that, Dr.
Drummond's purported opinion on capacity to premeditate is
inadmissible under St. Laurent, see 138 N.H. at 495, and the
admissibility of the facts underlying that opinion is an open
question in New Hampshire, see id.

Ernest; and (2) declining to consult with Dr. Drummond.  Judge Nadeau did not contradict or misapply Strickland by rejecting those arguments because, with respect to each issue, "there is [a] reasonable argument that counsel satisfied Strickland's deferential standard," Harrington, 131 S. Ct. at 788.

First, there is a reasonable argument that Hutchinson's counsel did not perform deficiently in deciding to forego the use of Dr. Drummond's 1991 opinion.  That opinion may have been admissible under the New Hampshire Rules of Evidence when Hutchinson was first tried in 1991, but it was rendered inadmissible by the NHSC's 1995 opinion in St. Laurent, see 138 N.H. at 494-95.  In light of St. Laurent, any attempt to introduce Dr. Drummond's 1991 opinion at Hutchinson's 2009 trial would have been futile.  "[F]ailing to pursue a futile tactic does not amount to constitutional ineffectiveness." Knight v. Spencer, 447 F.3d 6, 16 (1st Cir. 2006) (quoting Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999)).  Because Dr. Drummond's 1991 opinion on premeditation would have been inadmissible at Hutchinson's 2009 trial, his counsel did not provide ineffective assistance by declining to attempt its admission.

Second, there is a reasonable argument that Hutchinson's counsel did not perform deficiently by declining to consult with Dr. Drummond in advance of trial.  The only evidence from Dr.

22

Drummond that Hutchinson appears to have produced in support of his motion for a new trial is Dr. Drummond's inadmissible 1991 opinion.  That is, Hutchinson does not indicate what might have been gleaned from a consultation with Dr. Drummond that could have been used to his advantage at his 2009 trial.  Moreover, with respect to the issue of intent in criminal prosecutions, the NHSC considerably diminished the role of experts and, presumably, the value of consulting them, when it held:

> [T]the testimony of an expert psychologist on the ultimate issue of whether the defendant in fact formed or was capable of forming the requisite intent for the crimes charged will not aid the jury in its search for truth.
>
> The jury is capable of deciding the issue of intent without expert assistance.  . . .  [I]t is the factfinder's responsibility to determine intent, not the expert's as a thirteenth juror.  A psychological expert does not possess knowledge "superior" to that of the average person on the issue of intent.

St. Laurent, 138 N.H. at 495 (citing State v. Provost, 490 N.W. 2d 93, 101 (Minn. 1992)).  Hutchinson's 2009 counsel appears to have understood the change in the legal landscape that resulted from St. Laurent and unquestionably made a decision on trial strategy that fell comfortably within the "wide range of reasonable professional assistance," Harrington, 131 S. Ct. at 787 (internal quotation marks omitted).  For that reason, and because Hutchinson produced no admissible evidence that could

have resulted from a consultation with Dr. Drummond,
Hutchinson's counsel did not provide ineffective assistance by
deciding not to consult with Dr. Drummond.

The bottom line is this.  Judge Nadeau committed no error
in determining that Hutchinson's trial counsel had performed
reasonably, see Harrington, 131 S. Ct. at 788.  Moreover, in
light of Hutchinson's failure to establish any error by Judge
Nadeau with respect to the first prong of the Strickland
analysis, the court need not address the prejudice prong.
Because the state-court ruling was neither contrary to nor an
unreasonable application of Strickland, respondent is entitled
to judgment as a matter of law on Claim Three.


### Conclusion

For the reasons detailed above, I recommend that
respondent's motion for summary judgment, document no. 9, be
granted.

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch.

Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____

Landya McCafferty
United States Magistrate Judge

October 15, 2013

cc:  Walter Hutchinson Jr., Esq.
     Elizabeth C. Woodcock, Esq.